THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
JOHN LOWE et al., Appellants.

By the articles of association of a society organized in 1868 under the act of
1851 (Chap. 122, Laws of 1851), providing " for the incorporation of
building, mutual, loan and accumulating fund societies," its shares were
put at $1,000 each; each member was required to pay a weekly sub-
scription on every share held by him, and the actual capital was to
consist of the money thus contributed and of fines and premiums on
loans. As fast as a sufficient amount was thus accumulated loans or
"appropriations" were to be made from time to time to the members,
secured by real estate mortgages, upon which ten per cent was to be paid
annually. No interest was required to be paid. There was no pro-
vision in the articles of association or the mortgages given which entitled
the debtor members to have their mortgages canceled without payment. It
was declared that when each member had obtained his appropriation the
object of the society having been accomplished it should cease to exist.
Prior to October 23, 1884, nearly all the members had taken loans or appro-

priations to the amount authorized, upon which payments had been made as required and the weekly dues paid. On that day, at a meeting of the society regularly called, it was by resolution dissolved, and its board of managers authorized to wind up its affairs; the resolution declared that the creditor or unappropriated members, after paying their indebtedness up to November first, should receive $700 on each unappropriated share, in full of all claims, and each debtor or appropriated member should be credited with $350 per share to be applied on his bond and mortgage. At that time the members had paid in dues $442 on each share. The property of the society consisted mainly of mortgages, and if divided equally among the outstanding shares, would have given to each share $365. In an action brought by the attorney-general in the name of the People by certain of the debtor and creditor members against the members of the board of managers, among other things to have the resolution, so far as it provided for the distribution of assets, declared null and void, and the mortgages declared discharged, save as to subscription and redemption fees, which became due before said date. *Held,* that each member for each share held by him was entitled to the same amount, *i. e.,* a proportionate share of the assets; if a debtor, and if he owed more than his distributive share he was bound to pay the balance, and upon such payment was entitled to a discharge of his mortgage; if he owed less than his share, he was entitled to receive the balance; that the debtor members could not be required to pay interest, as it was part of the contract and scheme of the society that no interest should be charged, but that as the claim on the part of plaintiff, and those members instigating the prosecution, is not that the creditor members have or will be paid too much, or that the amount appropriated for the debtor members is too small, but that the former are entitled to $1,000 per share and the latter to nothing, but were entitled to have their mortgages absolutely satisfied without payment, they could not complain of the distribution actually made; and in absence of any proof of fraud or misconduct on the part of defendant, conceding that such an action could be brought and maintained in the name of the People by the attorney-general, as to which *quære,* this action was not maintainable.

It appeared that defendants had remitted or condoned some fines. *Held,* that their action in this respect was proper, as this was in accordance with the practice of the society and within a reasonable discretion vested in the managers.

One L. had bought real estate of the society, giving a mortgage for the purchase-price which he was unable to pay; he offered to surrender the property and the managers agreed to make a deduction of the mortgage to the actual value of the property upon his paying that sum. *Held,* that the board had power to make the deduction.

*People* v. *Lowe* (47 Hun, 577) reversed;

(Argued October 9, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 29, 1888, which modified and affirmed, as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are sufficiently stated in the opinion.

*Henry Wehle* for plaintiff. The action was well brought by the People. (Code Civ. Pro. §§ 488, 498, 499, 1781, 1782; *People* v. *Bruff*, 9 Abb. N. C. 153, 164; *Atty-Gen.* v. *U. Ins. Co.*, 2 Johns. Ch. 370; *People* v. *T. R. R. Co.*, 57 N. Y. 162; *People* v. *Ingersoll*, 58 id. 15; *People* v. *O'Brien*, 111 N. Y. 1; 2 Johns. Ch. 384; *Atty-Gen.* v. *F. Hospital*, 4 Bro. 165; 2 Ves. 42.) The articles of incorporation or by-laws, however obscure they may be respecting the provisions that the society shall be dissolved when it can pay the creditor members $1,000, and that upon dissolution debtor members are not required to make further payments upon their mortgages, must be construed as so providing, because both parties have adopted this construction. (*U. S.* v. *Allison*, 91 U. S. 303; *Chicago* v. *Sheldon*, 9 Wall. 54; *G. M. Ins. Co.* v. *Sherwood*, 14 How. [U. S.] 362; Pollock's Principal of Contract, 392; *Dunn* v. *Stenbring*, 11 N. Y. S. R. 721.)

*J. Langdon Ward* for plaintiff. A relator is not necessary. The People may sue in their own name. (Code of Civ. Pro. §§ 1781, 1782.) The control over the action and the right to bring it is with the attorney-general, and the courts cannot sit in judgment upon the exercise of his discretion or coerce his action. (*People ex rel.* v. *Fairchild*, 67 N. Y. 334–336; *People ex rel.* v. *Murray*, 73 id. 535–541; *Atty.-Genl.* v. *U. Ins. Co.*, 2 Johns. Ch. 370; *People* v. *Ingersoll*, 58 N. Y. 1, 12; *People* v. *A. & S. R. R. Co.*, 57 id. 161; *People ex rel.* v. *Atty.-Genl.*, 22 id. 114–117.) The provision in section 1986 of the Code, requiring the joinder of a relator, is directory merely. It is not of the essence of the action.

(*People* v. *Cook,* 8 N. Y. 84; *People* v. *Allen,* 6 Wend. 487; *Jackson ex dem.* v. *Young,* 5 Cow. 269; *Ward* v. *Chapin,* 13 N. Y. 509; *Cunningham* v. *Cassidy,* 17 id. 276; *Bloom* v. *Burdick,* 1 Hill, 130; *Stewart* v. *Slater,* 6 Duer, 83; *Canniff* v. *The Mayor,* 4 E. D. Smith, 430; *People* v. *Holley,* 12 Wend. 481; *Dawson* v. *People,* 25 N. Y. 399; *Striker* v. *Kelly,* 7 Hill, 9; *Sears* v. *Burnham,* 17 N. Y. 445.) It is in any event, if a defect at all, a defect which could, and properly should, have been cured by amendment, as of course. (*People ex rel.* v. *Walker,* 23 Barb. 304.)

*J. Noble Hayes* for defendants. As a matter of law, if the people failed to show that the defendants' trustees had been guilty of any fraud while in office, and that the distribution of the society's funds which they had made by direction of its members was equitable and just, and that no member had been deprived of any rights which he was insisting upon in this action, then the complaint should have been dismissed. (*Rome Ex. Bk.* v. *Eames,* 1 Keyes, 592; *Kelsey* v. *Western,* 2 N. Y. 506; *Ferguson* v. *Ferguson,* Id. 160; *Bailey* v. *Rider,* 10 id. 363; *Thomas* v. *Carter,* 4 Barb. 265; *N. Y. P. Ins. Co.* v. *N. Ins. Co.,* 20 id. 473; *Wright* v. *Delafield,* 25 N. Y. 270; *Southwick* v. *F. N. Bk.,* 84 id. 421; *Truesdale* v. *Searles,* 104 id. 167.) The plaintiff can only recover upon the cause of action stated in the complaint and upon the theory on which it proceeds. (*Mitchel* v. *Weaver,* 20 N. E. Rep. 525; *Feder* v. *Field,* Id. 129; *Moorman* v. *Wood,* 19 id. 739; *Mescall* v. *Tulley,* 91 Ind. 98; *Palmer* v. *R. R. Co.,* 14 N. E. Rep. 70; *Lodge* v. *Knight,* 20 id. 479.) The sum named in the articles of $1,000 as the value of each share, indicated its borrowing value and nothing more, and formed a monetary basis for the proper adjustment of reciprocal interests and rights growing out of the relations which the members sustained to each other. (*Bk. of Com.* v. *C. B. & S. F. Assn.,* 73 Penn. 89.) Assuming the defendant corporation to be an " Accumulating Fund," as well as a Mutual Loan Association, it, nevertheless, became dissolved on

October 23, 1884, by the happening of one of the events, whereon the statute, as well as the articles of association, provided its existence as a body corporate should end. (Laws of 1851, chap. 122, § 7; *Sturgis* v. *Vanderbilt*, 73 N. Y. 390; *Greely* v. *Smith*, 3 Story C. C. R. 658; *Denike* v. *R. C. Co.*, 80 N. Y. R. S. [7th ed.] chap. 18, tit. 3, § 9; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 524.) The express provision of the articles of association and the terms of the mortgages could not be controlled or altered by representations made by the officers of the corporation nor statement in its reports, and it was error to admit evidence which tended to impeach the articles and vary the terms of the mortgages. (*Beatty* v. *M. Ins. Co.*, 2 Johns. 109; *W. A. Co.* v. *Barlow*, 6 J. & S. 554; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *N. R. Ins. Co.* v. *Lawrence*, 3 Wend. 482; *Green* v. *Seymour*, 3 Sand. Ch. 285; *F. L. and T. Co.* v. *Perry*, Id. 339; *N. Y.* v. *Nichols*, 4 Hill, 209; *Fowler* v. *Le Roy*, 2 Sand. 202; *Hunt* v. *Rousmainer*, 8 Wheat. 174; 1 Peters, 1; *Oliver* v. *M. C. Ins. Co.*, 2 Curtis, 277; *Pitcher* v. *Hennessy*, 48 N. Y. 424.) The complaint should be dismissed for laches. (*Brown* v. *Buena Vista County*, 95 N. S. 157; Beach on Receivers, § 425; *Kean* v. *Colt*, 5 N. J. Eq. 395.) The complaint should have been dismissed for failure to state facts sufficient to constitute a cause of action. (*People ex rel.* v. *Atty.-Genl.*, 21 Hun, 478; *People* v. *O'Brien*, 18 N. E. Rep. 692; *People* v. *A. & S. R. R. Co.*, 57 N. Y. 162; *People* v. *Ingersoll*, 58 id. 16; 3 N. Y. Sup. 845.) There was no ground for the appointment of a receiver. (*Denike* v. *N. Y. and R. L. Co.*, 80 N. Y. 609.)

*Joseph H. Choate* and *Treadwell Cleveland* for defendants. The People of the state of New York have, as such, no interest in the controversy involved in this action, and no right to bring this suit. There should, at least, have been joined the relator, for the vindication of whose rights the suit is really brought, coupled with the statement of his cause of action based upon those rights; as it is no cause of action is set forth.

The complaint was, therefore, properly dismissed. (*People* v. *O'Brien*, 111 N. Y. 1, 33; *People* v. *Ballard*, 3 N. Y. Sup. 845; *People* v. *B. F. & C. I. R. R. Co.*, 89 N. Y. 75, 91; *People* v. *R., W. & O. R. R. Co.*, 103 id. 95; *U. S.* v. *U. P. R. R. Co.*, 98 U. S. 569.) The stockholders in such an action could not obtain relief, for the action was not brought upon their relation. (*People* v. *Booth*, 32 N. Y. 397; *People* v. *Bruff*, 9 Abb. N. C. 153.)

EARL, J. The Second Union Co-operative Land and Building Society in January, 1868, was incorporated under "An act for the incorporation of building, mutual loan and accumulating fund societies," passed April 10, 1851. Under section 1 of that act any number of persons, not less than nine, can associate and form an incorporated company for the purpose of accumulating a fund for the purchase of real estate, the erection of buildings or the making of other improvements upon lands, or to pay off incumbrances thereon, or to aid its members in acquiring real estate, making improvements thereon and removing incumbrances therefrom; and for the further purpose of accumulating a fund to be returned to its members who do not obtain advances when the funds of such association shall amount to a certain sum per share, to be specified in the articles of association. Section 2 provides that such persons shall severally subscribe articles of association, in which shall be set forth the name of the corporation, the monthly or weekly dues per share, the redemption fee on shares on which advances shall be made, the fees to be paid on the transfer of shares, the fines and penalties for non-payment of dues or fees or other violation of the articles of association, the manner of redemption of shares by advances made thereon, the mortgage security to be taken on such advances and how the same may be redeemed or changed, the manner of investing funds not required for advances on shares, and other matters. Section 7 provides that every such corporation shall terminate, except for the purpose of settling its affairs, whenever all the shares thereof shall be redeemed

by advances thereon, or whenever the owners of unredeemed shares shall be paid the ultimate value thereof as provided in the articles of association, and no sooner. Section twenty provides that no loan made by any such association to any of its members shall exceed in amount the par value of the capital stock for which such member may have subscribed. ·

The articles of association adopted by the society provide, in article 2, that the object of the society is, by co-operation, to enable its members to become their own landlords by providing funds for each member to purchase real estate, and to make improvements thereon. Article 14 provided that all persons, on becoming members, shall pay an entrance fee of fifty cents for the first two shares, and twenty-five cents for each additional share; and that the subscription shall be fifty cents per week on every share of $1,000 held by any member. Article 16 provided that appropriations shall be disposed of by alternate ballot and open sale; that about two weeks before the money at bank is expected to amount to $1,000, an appropriation by ballot shall take place; that the member obtaining it shall receive $1,000 on each share held by him, to be paid as soon as the money at the bank amounts to that sum; that one other right of appropriation shall be sold the same evening, the amount to be sold to be fixed at $1,000; that the purchaser shall be entitled to the full amount of shares held by him at the same ratio; that it shall be sold to the highest bidder, the payment for the same, with no more than $250 premium for each $1,000 share, being extended over a space of ten years, and should more than $250 premium be given per thousand, the amount over such sum shall be paid in cash; that the payment of all appropriations being extended over a space of ten years shall go towards making up future appropriations; that a member, having obtained an appropriation, may select real estate, upon which he shall give a mortgage for the repayment of the sum advanced, such advance to be repaid at the rate of ten per cent per annum, in monthly installments; that when the whole advance has been repaid he shall continue to pay his weekly subscriptions until he has

paid the whole amount of subscriptions due. Article 24 provides that when each of the members has obtained his appropriation, then, the object of the society having been accomplished, it shall cease to exist.

The shares of the corporation were $1,000 each, and many persons became members thereof. The corporation had no actual capital except the money accumulated from the weekly dues, fines and premiums on loans; and from this appropriations were made, from time to time, by ballot and sale, as provided in the articles, secured by mortgages. Prior to the 23d day of October, 1884, nearly all the members had taken appropriations, to wit: One thousand dollars for each share held by them, and upon such appropriations they had made the payments required at the rate of ten per cent annually, and had also paid their weekly dues, and on the day last named there were forty members still remaining in the society, thirty-four debtor members and six creditor members. On that day, at a special meeting of the society regularly called, the following preamble and resolutions were adopted:

"Whereas the Second Union Co-operative Land and Building Society, of the city of New York, has now fulfilled all the purposes for which it was created, and all conditions wherein it was and is limited to determine having been performed, save the passage of these resolutions only, and due notice of the same having been given to the members of the said society, be it resolved accordingly: That all weekly subscriptions be hereby discontinued, and that the said society be dissolved by the passage of these resolutions, and that its board of management, on such dissolution, shall immediately become its lawful successor for the purpose of winding up its affairs by collecting its debts, settling with its members and distributing its assets upon the following basis:

"1st. The creditors or unappropriated members, after paying their indebtedness to the society up to November first, shall receive $700 each on each unappropriated share held by them, or any of them, in lieu of the share which such member might otherwise be entitled to receive of the assets of the

society, and in full satisfaction of all claims upon and interest in the funds of said society.

" 2d. Each debtor or appropriated member shall be credited with full $350 on each share held by him (as his share of the society's surplus funds), and the same shall be off-set against the members indebtedness on bond and mortgage, or otherwise, to the society, the balance struck and the members settled with accordingly.

" It is further resolved and provided, however, that $25 per share of the amounts to be allowed to both creditor and debtor members, as provided in the foregoing resolution, shall be withheld in settling with each member to provide a fund for the payment of legal and other expenses incurred in winding up the said society, and provide against a reduction of the estimated amount of assets upon which the foregoing calculation is based, by reason of the failure of the board of management to collect all of the debts due to the society, the $25 per share so withheld to be paid to the member upon the final settlement of the society's affairs, less such deficiencies as may be charged to the same by reason of the aforesaid.

" Be it further resolved, that the board of management shall be authorized and empowered to employ competent counsel to bring such suits and perform such legal services in winding up the said society as the said board may deem necessary, and to pay for the same out of the funds, society funds in their possession.

" Be it further resolved, that the board of management shall be authorized and empowered to employ a clerk to attend to the clerical duties of the board, with a salary to be fixed by the board."

At that time the members had paid, in dues, the sum of $442 upon each share, and the property of the society, consisting mainly of mortgages given by members to secure appropriations made to them, amounted to $30,000, which, if then divided among eighty-two shares, the whole number then existing, would have given to each share $365.

Under these resolutions the board of managers proceeded to wind up the affairs of the society, and had, prior to the commencement of this action, in April, 1887, settled satisfactorily with all the members, and received releases from them, except five, three of whom were debtor members and two creditor members. In the month last mentioned, at the instigation of these members, or of some of them, this action was commenced by the attorney-general. In the complaint various acts of misconduct on the part of the defendants were mentioned, and it is charged that the resolutions referred to, excepting so much of them as declared the dissolution of the society, were contrary to the articles, the by-laws and the plan of operation of the society, and were only passed for the purpose of enabling the defendants to carry out their fraudulent scheme of securing to themselves unlawful dividends and profits and to invalidate the provisions contained in the articles; and a judgment is demanded that the resolutions, in so far as the same provide for the distribution of the assets of the society, be declared null and void and of no effect; that the individual defendants be compelled to account for their official conduct in the management and disposition of the funds and property of the society; that they be adjudged to pay back into the fund of the society all the moneys illegally paid out by them for or on account of unlawful dividends, and all moneys lost to the society by their neglect to collect the dues, fees and fines which were owing by the defendants and others, and all moneys collected by them in pursuance of the resolution above set out; that the individual defendants be removed and suspended from exercising their office as officers of the society and that they be enjoined from receiving any debt or demand owing to the society, or from prosecuting any of the foreclosure suits commenced by them against members of the society, or in any way interfering with any of the funds of the society, or from delivering to any one any money, property or effects of the society, and that it be declared dissolved; that a receiver of its property be appointed by the court with the usual powers of such receivers in like cases, and that such

receiver be directed to pay the creditor members of the society
$1,000 on each share, and that the mortgages executed by
members of the society be declared discharged, except as to
subscription and redemption fees which became due before
October 23, 1884.

The action was put at issue by the defendants and brought
to trial at a Special Term, and the trial judge found, as facts,
the organization of the corporation, the adoption and filing of
the articles of association, that on the 23d day of October,
1884, the society could pay to each creditor member the sum
of $1,000, upon every share held by such creditor member,
and could be dissolved in accordance with the plan of its
organization; that the individual defendants caused the
society to call a special meeting, at which meeting the resolu-
tions above-mentioned were adopted; that a minority of the
members protested against the resolutions, and that they had
committed various acts of misconduct mentioned. And he
found, as conclusions of law, among other things, that, accord-
ing to the provisions of the by-laws, the debtor members of
the society were required to pay the redemption fees, upon
their mortgages up to the time when the society ceased to
exist; that the society was required to remain in existence
until it could pay to each creditor member the sum of $1,000,
upon each unappropriated share; that the resolutions of
October 23, 1884, were, so far as they assumed to make a
disposition of the property and assets of the society, illegal and
void; that the dividend of $350, payable to the debtor mem-
bers, as stated in the resolutions, had not been earned and was
illegal; that the attempt by the individual defendants to
appropriate to themselves, as debtor members, the illegal
dividend, and the payment thereof to such debtor members
was a violation of their duty as trustees of the society; that
the defendants further violated their duty as trustees of the
society in omitting to collect the fines due to the society, in
demanding of the various debtor members payment of the
amounts claimed to be due upon their mortgages to the society,

and in omitting to make reports of their proceedings to the society. And he found that the plaintiffs were entitled to judgment declaring the society dissolved, removing the individual defendants as trustees and appointing a receiver with the usual powers to distribute the assets and property of the society, and to execute satisfaction pieces of the mortgages made by members who had paid the amounts which had become due thereon up to October 23, 1884.

Judgment was entered in accordance with the decision, in which a receiver of the property and assets of the society was appointed, who was ordered, upon receiving upon any of the mortgages held by the society the amounts due from the mortgagors for redemption fees and fines which became due and payable to the society up to and prior to October 23, 1884, to execute to the mortgagors full certificates of satisfaction of said mortgages and cancel the same and the bonds accompanying them; and that he should pay the two creditor members of the society $1,000 each, with interest from October 23, 1884, deducting, however, any amount which might be owing by them for dues and fines prior to that date. And it was further adjudged that the plaintiffs recover the costs of the action, together with an allowance of $500 against the individual defendants, amounting, in all, to $677.65. From the judgment thus entered the defendants appealed to the General Term, where the judgment was modified and affirmed as modified, and from the judgment of the General Term both parties appealed to this court, the plaintiffs from the modification thereof only.

This society, at the time of its organization, had no capital. The shares were $1,000 each, and each member was required to pay a weekly subscription of fifty cents on every share held by him, and the actual capital was to consist of the money thus contributed. The scheme clearly was that these contributions were to continue until the society had a cash capital of $1,000 for each share, and then it was to come to an end. As fast as a sufficient amount was thus contributed it could be borrowed by the members. Any member could borrow or

take $1,000 for every share held by him, which he was required
to secure by a real estate mortgage, upon which ten per cent
should be paid annually in monthly installments until the whole
amount should thus be paid.   The member taking what are
called appropriations, or, in other words, borrowing money in
this way, was not required to pay any interest thereon, but was
simply required to pay his weekly dues and his monthly
installments.   A member might borrow $1,000, if appropri-
ated to him by ballot, or, if not so appropriated, he might
obtain that amount by bidding for the same and paying the
highest premium offered, and the premium thus paid went
into the funds of the society.   As, according to the scheme of
the society, every member could obtain, on terms of equality
with all the other members, an appropriation of $1,000 for
every share held by him, there was no substantial injustice in
allowing the members who took their appropriations to have
the money without interest.

There was no provision in the articles of association or in
the mortgages which entitled the debtor members to have their
mortgages canceled without payment.   Every member was
to stand upon an equal footing, the debtor and the creditor
members.   If the scheme was carried out every member would
receive, at the termination of the society, $1,000 for each share
held by him, that is, the creditor members would be paid
that sum and the debtor members would receive such a sum
of money as, together with the amounts then unpaid upon their
mortgages would make to each of them $1,000 per share.
But the scheme was not carried out.   The society was con-
tinued until the weekly contribution instead of making a fund
of $1,000 for each share had made a fund of only $442, or
even less; and while the society was in that condition, by the
act and acquiescence of all its members, it came to an end, and
thus the scheme, to some extent, was frustrated.   It is the
theory of the complaint and the decision of the court below
that the society was dissolved on the 23d day of October 1884.
But the rule of equity must, nevertheless, prevail among the
members.   Each member for each share held by him was

entitled to precisely the same amount in the assets of the society, and such assets should be distributed accordingly. Those who were debtors, if they owed more than their distributive shares of the assets, should pay the balance to the society, and upon such payments should have their mortgages canceled. If they owed less than their distributive shares, they should have their mortgages canceled and receive the balances so as to make them equal with the creditor members.

The claim made on behalf of the People, and the five members represented by them in this case, that the three debtor members were entitled to have their mortgages canceled without payment, and that the creditor members were entitled each to have $1,000, is utterly without any foundation; and the counsel for the defendants has a proper conception of the rights of his clients when he claims that, in winding up the affairs of the society, the trustees are bound to distribute its assets among its members equally according to their respective shares.

The only error, therefore, apparent in the resolutions under which the individual defendants were proceeding, was in ordering that $700 per share be paid to each of the creditor members, and $350 per share to each of the debtor members. So far as appears in this record, there was no authority for paying a creditor member a larger distributive share than was paid to a debtor member. It is true that a debtor member may have borrowed money without the payment of interest; but that was his contract, and that was the scheme of the society, and he cannot be required, in the settlement of its affairs, to make any allowance whatever for interest. If he pays, or is charged with the principal due upon his mortgage, he has discharged his whole duty to the society as a debtor. In other respects he stands upon a footing of precise equality with the creditor members. Upon the trial the defendants attempted to explain why they made the difference in the payments of $700 to the creditor members, and $350 to the debtor members, and, upon objection, they were prohibited from giving the proof.

But the People, and the five members represented by them, have not complained that the creditor members have been paid, or will be paid, too much; but their claim is, that they have not been paid or offered enough; and they have made no complaint that the amount appropriated for the debtor members is too small. But their claim is, that they ought not to be paid anything, and that their mortgages should be absolutely satisfied. It may be that facts exists which would now preclude them from objecting to the appropriation and distribution which has been provided for in the resolution, and made in pursuance thereof. The three debtor members still remaining, who are represented by the plaintiffs in this action, received their appropriations but a few months previous to the passage of the resolutions, and they have paid upon their mortgages but a small percentage; and yet their claim is, that because the society has come to an end, although prematurely, they are absolutely entitled to have their mortgages canceled without payment. No claim could be more preposterous, and there is no justification for it in the law or in the articles of association of the society.

A careful scrutiny of this case fails to disclose to us any proof of any fraud or misconduct on the part of these defendants. With the exception of the discrimination which they made between the debtor and creditor members, of which no one has complained, they were proceeding to wind up the society in precise accordance with the law applicable to the facts. It does not appear that they had taken a dollar to which they were not entitled or that they had paid anyone a dollar to which he was not entitled. They had remitted or failed to collect some fines, but according to the practice of the society and within a reasonable discretion vested in the trustees or managers of the society, they must have had power to remit and condone fines.

They had power, also, to settle with the defendant Lowe who had bought real estate of the society and given back a mortgage for the purchase-price which he was unable to pay. He offered to surrender the property if the society would take it,

and the trustees in the exercise of a reasonable discretion made a deduction of $700 from his mortgage in case he would pay the balance and thus reduce his indebtedness to the actual value of the property. Nothing whatever was lost to the society, so far as the case discloses, which could have been saved by any other procedure.

Therefore, assuming that the attorney-general, in the name of the People, could commence and maintain this action, there does not seem to have been, so far as this record discloses, the least ground for doing so. No public right or interest was involved; and no interest whatever, except those of the five members who were all claiming more than they were entitled to, and making charges of misconduct against the trustees, which, so far as the record discloses, had not the least foundation in fact. The litigation has been most disastrous, entailing large costs and expenses, not only in this action, but by reason of other actions commenced in the name of the receiver, in all probability consuming and wasting most, if not all, the remaining assets of the society.

These views lead to a reversal of the judgment. But we ought not to stop here. It is claimed, on behalf of the defendants, that upon the facts alleged in the complaint, and established upon the trial, the People have no right to maintain this action.

There are certain corporations, such as municipal, charitable, religious and eleemosynary, which are public and discharge functions which might otherwise devolve upon the government; and they have always, in this country and England, been more or less subject to chancery control and supervision. They are not organized to promote private interests or to achieve financial ends, but to promote the public good. There are other corporations, much the largest number, which are in every sense private and are organized solely to subserve private interests and to promote individual, as distinguished from the public, welfare. With such corporations, so long as they keep within their chartered powers, and do not abuse or forfeit their corporate franchises, the public have no espe-

cial concern.   Their affairs must be administered under general laws for the protection of the public by persons interested therein who must redress their wrongs and enforce their rights like other citizens.

It is a general rule running through our whole system of jurisprudence that no person shall bring a suit, or even be a party to one, unless he has some interest therein, and this rule is emphasized in the Code by the requirement that every action shall be commenced by the real party in interest; and the same rule, in reason certainly, applies to actions commenced by the People.

Suits like this could never be commenced at common law or under statutes of England existing prior to the organization of our government.   In *United States* v. *Union Pacific Railroad Company* (98 U. S. 569), Mr. Justice MILLER, speaking of the actions in equity which the government may maintain against corporations, says that they fall under two heads: (1) "Where municipal, charitable, religious or eleemosynary corporations, public in their character, had abused their franchises, perverted the purpose of their organization, or misappropriated their funds, and as they, from the nature of their corporate franchises, were more or less under government supervision, the attorney-general proceeded against them to obtain correction of the abuse; or, (2), where private corporations, chartered for definite and limited purposes, had exceeded their powers, and were restrained or enjoined in the same manner from the further violation of the limitations to which their powers were subject."   And the law upon the subject is quite thoroughly discussed in *Attorney-General* v. *Utica Insurance Company* (2 Johns. Ch. 371) and *People* v. *Ingersoll* (58 N. Y. 1).   In *People* v. *Booth* (32 N. Y. 397) it was held that the People of the state, like all other parties to actions, must show an interest in the subject-matter of the litigation to entitle them to prosecute a suit and demand relief. In *People* v. *Albany & Susquehanna Railroad Company* (57 N. Y. 161) it was said by Judge JOHNSON that "the People of this state have no general power to invoke the action of the

courts of justice by suits in their name of sovereignty for the redress of civil wrongs sustained by some citizens at the hands of others. When they come into court as plaintiffs in a civil action they must come upon their own right for relief to which they are themselves entitled. It is not sufficient for the People to show that wrong has been done to some one; the wrong must appear to be done to the People in order to support an action by the People for its redress." In *People* v. *Brooklyn, Flatbush & Coney Island Railroad Company* (89 N. Y. 75), FINCH, J., said: "The attorney-general, in an action brought by him, represents the whole People and a public interest, and not merely individuals and private rights."

We may now inquire whether there are any statutes which require a modification of these views. It was provided in the Revised Statutes (2 R. S. 462, § 33), as follows: "The chancellor shall have jurisdiction over directors, managers and other trustees and officers of corporations: (1.) To compel them to account for their official conduct in the management and disposition of the funds and property committed to their charge. (2.) To decree and compel payment by them to the corporation whom they represent, and to its creditors of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others, or may have lost or wasted by any violation of their duties as such trustees," and there are other subdivisions of the section not now material. Section 35 provides as follows: "The jurisdiction conferred by the preceding twenty-third section shall be exercised as in ordinary cases on bill, or petition as the case may require, or the chancellor may direct, at the instance of the attorney-general proceeding in behalf of the People of this state, or at the instance of any creditor of such corporation, or at the instance of any director, trustee or other officer of such corporation having a general superintendence of its concerns." The revisers, in their note to section 33, say that, "the first subdivision is intended, in connection with section 35, to give the Court of Chancery in this state the same power that is exercised by that court in England in cases of

charitable corporations, and in other cases." The precise scope of subdivisions 1 and 2 of section 33 may not be certain, and cannot, in a general way, be easily defined. If it was intended only to confer upon the Court of Chancery here the same power possessed by the chancellor in England, then their operation must be confined to the public corporations above referred to. We need not now determine that they may not have operation in other cases. They may apply to *quasi* public corporations like railroad, banking and insurance corporations which have important relations to the public welfare and in which, therefore, the People may have some interest justifying public interference. But the two sections do not create or purport to create causes of action which did not otherwise exist, and it clearly was not the intention, for the first time in the history of English jurisprudence, to empower the attorney-general, in his absolute discretion, to institute suits in the name of the People, in which they did not have the least interest, to enforce rights or redress wrongs for which private suitors had ample and convenient remedies. Section 33 confers upon chancery jurisdiction in the cases mentioned, and section 35 must be construed as authorizing the attorney-general to invoke that jurisdiction in behalf of the People only in a proper case for interference by the People where, upon settled principles of law, they are a proper party plaintiff for the protection or enforcement of some public right or interest.

Suits like this are a new invention. We believe they were unknown to the generation of statesmen, judges and lawyers living at the time of the adoption of the Revised Statutes, and for more than fifty years after that time no trace of such an action can be found in the reports of this state. Contemporary construction is certainly of some value, and that is against the contention of the plaintiff.

Section 1781 of the Code is a substantial re-enactment of section 33 of the Revised Statutes in the following language; " An action may be maintained against one or more trustees,

directors, managers or other officers of a corporation to procure a judgment for the following purposes, or so much thereof as the case requires: (1.) Compelling the defendants to account for their official conduct in the management and disposition of the funds and property committed to their charge. (2.) Compelling them to pay to the corporation which they represent, or to its creditors, any money, and the value of any property which they have acquired to themselves or transferred to another or lost or wasted by a violation of their duties; " and then follow other subdivisions which embody the matters contained in the subdivisions of section 33 which follow the second subdivision thereof. Section 1782 of the Code is a substantial re-enactment of section 35 of the Revised Statutes, and is as follows : " An action may be brought as prescribed in the last section by the attorney-general in behalf of the People of the state ; or, except where the action is brought for the purposes specified in subdivision third or fourth of that section, by a creditor of the corporation, or by a trustee, director manager, or other officer of the corporation, having a general superintendence of its concerns."

It is thus seen that sections 1781 and 1782 of the Code confer no broader authority upon the attorney-general to commence suits in behalf of the People than was conferred by sections 33 and 35 of the Revised Statutes. Section 1808 of the Code provides that when the attorney-general has good reason to believe that an action can be maintained in behalf of the People of the state under sections 1781 and 1782, and other sections referred to, " he must bring an action accordingly, or apply to a compent court for leave to bring an action, as the case requires, if, in his opinion, the public interests require an action should be brought." This section shows that the legislature had in mind the public, not private interests in authorizing the actions, and that the attorney-general was expected to consult and regard public, and not private interests in instituting them. He is to determine, in the first instance, whether the public interests require an action to be brought, and he may act upon his determination, subject to no control. But

it could not have been intended that his determination should be final for all purposes, and that he could, in his absolute discretion, by a suit in the name of the People, and at their expense and risk, intrude into a mere private quarrel and carry on a litigation for purely private ends in which the People in no proper sense have a shadow of right or interest. Neither public nor private interests require the maintenance of such an action as this. The private parties who feel aggrieved in such cases have ample remedies to redress their wrongs by proceedings in their own names; and why should not the complaining members of this corporation redress them in that way at their own expense and risk? It may be that these defendants would have some defense, as to them, which in this action by the People they cannot interpose. They might be able to show that, by participation or acquiescence in, or assent to the acts complained of, those members, or some of them, are estopped from assailing such acts.

But we are not agreed as to the authority of the attorney-general to maintain such an action as this upon the facts alleged, and, therefore, do not now determine whether or not he has such authority. We all agree that upon the first ground the judgment should be reversed, and there we rest our present decision.

Judgment reversed and new trial granted, costs to abide the event.

All concur.

Judgment reversed.