JOSEPH R. SWAN, Appellant, *v.* MUTUAL RESERVE FUND LIFE ASSOCIATION, Respondent.

1. ASSESSMENT LIFE INSURANCE — ACTION AGAINST ASSOCIATION FOR ACCOUNTING. An action, brought by a member of a domestic co-operative or assessment life insurance association against the corporation, in behalf of himself and all other policyholders, to enforce the performance of the provisions in the contract or policy of insurance in respect to the reserve fund, by a complaint which alleges an improper accumulation, retention, and intended misapplication, of a surplus of the reserve fund, and which prays that the number of living policyholders, and the amount paid by them to the reserve fund, be ascertained, and that the plaintiff be paid a ratable amount of the surplus reserve fund, in the proportion which his contribution thereto bears to the whole amount contributed by living policyholders, is an action for an accounting and for an interference with the prosecution of the business of the corporation, within the prohibition of the Insurance Law (L. 1892, ch. 690, § 56).

2. APPLICATION OF INSURANCE LAW.  A member or policyholder of the corporation has not, as such, legal capacity to maintain such an action, since the provisions of the Insurance Law (L. 1892, ch. 690, § 56) apply to it and prohibit him from maintaining it; and the action must be brought, if at all, by the attorney-general.

3. CONSTITUTIONALITY OF STATUTE — REGULATION OF REMEDY, NOT DEPRIVATION OF RIGHT.  The provision of the Insurance Law (L. 1892, ch. 690, § 56) which prohibits a judgment for an accounting or interfering with the prosecution of the business of any domestic insurance corporation, except upon application of the attorney-general, does not violate any constitutional right of a policyholder or member, as impairing the obligation of his contract; but it merely prescribes the form of the remedy which he must avail himself of, to compel the corporation to perform acts, or to account as to matters in respect to which it may be alleged to have been neglectful, or wasteful, or mistaken.

*Swan* v. *Mut. Reserve Fund Life Assn.*, 20 App. Div. 255, affirmed.

(Argued January 10, 1898; decided January 25, 1898.)

APPEAL, by certification, from an interlocutory judgment and order of the Appellate Division of the Supreme Court in the fourth judicial department, entered respectively August 30 and August 12, 1897, reversing an interlocutory judgment of Special Term overruling a demurrer to plaintiff's complaint, and sustaining the demurrer.

This was an action brought by the plaintiff, in behalf of himself and all others similarly situated, to enforce the provisions of a policy of assessment life insurance.

The questions certified and the facts, so far as material, are stated in the opinion.

*William Kernan* for appellant.  The facts alleged in the complaint are to be taken as true as against the demurrer. (*A. S. Co.* v. *Bennett*, 73 Hun, 81; *Pettibone* v. *Moore*, 75 Hun, 461; *Milliken* v. *W. U. T. Co.*, 110 N. Y. 403; *Kain* v. *Larkin*, 141 N. Y. 144; *Sage* v. *Culver*, 147 N. Y. 241.) In answer to the first question to be reviewed, we contend that the complaint states facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. (*Brown* v. *B., N. Y. & E. R. R. Co.*, 27 Hun, 342; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157; *Jermain* v. *L.*

*S. & M. S. R. Co.*, 91 N. Y. 483 ; *Sternberger* v. *McGovern*, 56 N. Y. 12.) In answer to the second question to be reviewed, we contend that the plaintiff has legal capacity to sue and maintain this action, and that it cannot be brought by the attorney-general under the Code. (Code Civ. Pro. §§ 1781, 1782; *People* v. *Lowe*, 117 N. Y. 175 ; *People* v. *Ballard*, 134 N. Y. 269 ; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157.) In answer to the third question to be reviewed, we contend that the law of 1892 does not apply to this action, and the plaintiff is not prohibited thereby from maintaining this action. (L. 1892, ch. 690, § 56.) In answer to the fourth question to be reviewed, we contend that neither the officers nor the directors of the corporation are necessary parties, and that there is no defect of parties defendant to the action. (*Chase* v. *Vanderbilt*, 62 N. Y. 307 ; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157 ; *Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 483.)

*Raphael J. Moses, W. T. B. Milliken, F. A. Burnham* and *Thomas S. Jones* for respondent. The court has no jurisdiction of this appeal. (Const. N. Y. art. 6, § 9 ; Code Civ. Pro. § 190 ; *Adams* v. *Fox*, 27 N. Y. 640 ; *Armstrong* v. *Weed*, 62 N. Y. 250 ; *Brinkley* v. *Brinkley*, 47 N. Y. 46 ; *Elwell* v. *Johnson*, 74 N. Y. 81 ; *Walker* v. *Spencer*, 86 N. Y. 162 ; *Raynor* v. *Raynor*, 94 N. Y. 251 ; *Grannan* v. *W. R. Assn.*, 153 N. Y. 458 ; *Graver* v. *Faurot*, 162 U. S. 435 ; *Maynard* v. *Hecht*, 151 U. S. 326 ; *F. Ins. Assn.* v. *Wickham*, 128 U. S. 426.) Becoming a member of a mutual co-operative assessment company, transacting business under chapter 175 of the Laws of 1883 of the state of New York, binds the plaintiff to accept all changes of plan relating to the internal administration of the affairs of the company. (*Kent* v. *Q. M. Co.*, 78 N. Y. 159 ; *Engelhardt* v. *F. W. L. Assn.*, 148 N. Y. 281 ; *Weiler* v. *E. A. Union*, 92 Hun, 277 ; Bacon on Ben. Soc. & Life Ins. [2d ed.], § 61a ; *Bomeisler* v. *Forster*, 154 N. Y. 229.) The demurrer only admits such allegations of the complaint as are sufficiently pleaded, and these

for the purpose of the demurrer only. (*Ins. Co.* v. *Mowry*, 96 U. S. 544; *White* v. *Ashton*, 51 N. Y. 280; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 283; *Pohalski* v. *M. L. Ins. Co.*, 4 J. & S. 234; 56 N. Y. 640; *Harper* v. *A. M. Ins. Co.*, 17 N. Y. 194; *Lamatt* v. *H. R. F. Ins. Co.*, 17 N. Y. 199, note; *Howell* v. *K. L. Ins. Co.*, 24 How. Pr. 475; *Renard* v. *Sampson*, 12 N. Y. 561; *B. C. Inst.* v. *Bitter*, 87 N. Y. 250; *Bonnell* v. *Griswold*, 68 N. Y. 294; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328.) The complaint does not state facts sufficient to constitute a cause of action. (*E. S. S. Bank* v. *Beard*, 81 Hun, 184; *Peters* v. *Delaplaine*, 49 N. Y. 362; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296; *Hun* v. *Cary*, 82 N. Y. 65; *Graves* v. *Spier*, 58 Barb. 349; *Long* v. *Warren*, 68 N. Y. 426; Code Civ. Pro. § 1207; *Kelly* v. *Downing*, 42 N. Y. 71; *Edson* v. *Girvan*, 29 Hun, 422; *Swart* v. *Boughton*, 35 Hun, 281; *Simonson* v. *Blake*, 12 Abb. Pr. 331.) The plaintiff has no legal capacity to sue. (*Karns* v. *R. & G. V. R. R. Co.*, 4 Abb. [N. S.] 107; *Verplanck* v. *M. Ins. Co.*, 1 Edw. Ch. 83; *Bewley* v. *E. L. Ins. Co.*, 61 How. Pr. 344; *Uhlman* v. *N. Y. L. Ins. Co.*, 109 N. Y. 421; *Everson* v. *E. A. Co.*, 68 Fed. Rep. 258; *Culbertson* v. *W. N. Co.*, 4 McLean, 544; *Taylor* v. *C. O. L. Ins. Co.*, 9 Daly, 490.) There is a defect of parties defendant in that the officers and directors of the defendant company are not made parties defendant. (*Karns* v. *R. & G. V. R. R. Co.*, 4 Abb. Pr. [N. S.] 107; *Verplanck* v. *M. Ins. Co.*, 1 Edw. Ch. 87.) The demurrer should be sustained and the complaint dismissed, with costs. (Morawetz on Priv. Corp. §§ 240, 241.) Neither by appeal from the final judgment, nor by the questions certified by the Appellate Division can any question of law be raised in this court, as these legal questions are merely subsidiary to the relief asked, to wit, specific performance, and the right to specific performance, even as to realty, is not a legal right, but rests in the discretion of the court below. (*Heller* v. *Cohen*, 154 N. Y. 299; *Hyer* v. *R. T. Co.*, 18 U. S. Sup. Ct. Repr. 114.)

Gray, J. Certain questions have been certified to this court by the Appellate Division of the Supreme Court, in the

fourth department; which have arisen upon the defendant's demurrer to the complaint, in an action brought by him as the holder of a policy of insurance, in behalf of himself and of all other policyholders. The grounds of the demurrer are, *first*, insufficiency to constitute a cause of action; *second*, the want of legal capacity in the plaintiff to sue, in that the action is not brought by the attorney-general, nor by a judgment creditor and, *third*, a defect of parties defendant, in that none of the defendant's officers and directors are made parties.

An examination of the complaint shows that the defendant was organized in 1881, under the laws of this state, to transact the business of life insurance upon the co-operative, or assessment plan. In the same year, it issued its policy to the plaintiff to the amount of $5,000, with annual dues of $6.00 and subject to certain assessments upon notice. The contract of insurance is embodied in the complaint and it contains certain agreements upon the part of the defendant. From the sum received by way of assessment upon the entire membership, in the event of the decease of a member, the company is to set aside, as a reserve fund, twenty-five cents on each $1,000; which fund, to be constituted from such assessments and as well from the net earnings of the association, is to be deposited with the Real Estate Trust Company of New York, as trustee, for the exclusive benefit of the members of the association; the interest upon the same being payable to the treasurer of the association. When that fund has reached the sum of $100,000, any deficiency in an assessment, to meet the payment in full of a certificate, shall be made up by a payment by the trustee from the reserve fund. When the fund amounts to $200,000, the interest earned upon the same is to be paid as a dividend to those who have been members for a period of five years, in a certain proportion. When the fund amounts to $1,000,000, all future sums set aside for the reserve, on each assessment, are to be equitably divided among the members. It is unimportant to refer particularly to other provisions of the policy. The complaint alleges, in

substance, that the various assessments paid to the company, since its formation, have amounted to upwards of $18,590,000 and that it has not set aside twenty-five cents on each one thousand dollars of insurance, as agreed, " but a much less sum, the amount whereof this plaintiff is unable to state." It is alleged that it was agreed that the annual dues should be used to pay the expenses of management and that those expenses should not exceed $2.00 for $1,000 of insurance and that " said company and the officers thereof have conducted and are now transacting the business of the company in a most lavish and extravagant manner and have, for a number of years, expended a large sum of money in excess of said yearly dues, amounting to hundreds of thousands of dollars each year." It is alleged that the admission fees, which, with the portion of the sum received from each assessment, were to form the reserve fund, have amounted to millions of dollars since the company commenced business, and should have been placed to the credit of that fund ; but that, " in order to meet the demands caused by the reckless and extravagant management of the concerns of the company, the officers of the company have been compelled to trench upon the reserve fund and to swallow up the whole amount of the admission fees." It is alleged that the amount of the assessments made, up to March 17th, 1893, was upwards of $18,590,000, and the amount put to the credit of the reserve fund was about $3,410,000. The provisions of the insurance contract with respect to the distribution of the reserve fund, when it amounted to $200,000, are then referred to in the complaint and the allegation is made that since that amount was reached no part of the interest paid upon the same has been paid as a dividend to the plaintiff, or to those who had been members for a period of five years ; but that such interest, to an amount of upwards of $500,000, in violation of said contract, has been paid over to the mortuary fund, for the benefit of all the members of the association. It is alleged that the reserve fund now amounts to upwards of $3,449,000 and that no portion of the surplus over and above the sum of $1,000,000, the limit

fixed for that fund by the contract of insurance, has been divided among the members. It is alleged that there are no other funds of the association, after paying expenses, except the death fund, which is used exclusively to pay insurance on the lives of policyholders, and the reserve fund, which is held by the trustee, under the provision referred to in the policy of insurance, exclusively for the benefit of the members of the association and that said reserve fund is not an asset of the association, but a trust fund of which the trustee alone should have the control. The complaint, also, alleges that, " in violation of said reserve fund, said association has recklessly scattered large sums on deposit in England, Canada, France, Italy, and Sweden, the amount thus diverted from the trust created by the policyholders, to whom it belongs, being nearly $400,000, and that, in the course of their extravagant dealings with the property which should be held in trust for their policyholders, said company is proceeding to speculate with the same, and has, or is, about to purchase a large amount of real estate and erect an enormous building in the City of New York." The prayer for judgment is that the defendant be compelled to set aside for the reserve fund, twenty-five cents upon each one thousand dollars of insurance received from assessments ; that it expend for the management, only, the annual dues ; that it pay over to the reserve fund all the admission fees ; that the interest on the reserve fund, heretofore paid over to the mortuary fund, be paid back to the reserve fund, or to the treasurer of the association, to be paid as a dividend to this plaintiff and such others as may have been members for a period of five years and that the whole amount of the reserve fund, above $1,000,000, be divided among the policyholders, according to the terms of the contract of insurance. It is then prayed, " that the total number of policyholders now living be ascertained and the total amount paid by such policyholders to the reserve fund be ascertained and the amount paid by the undersigned to the reserve fund be ascertained and the undersigned be paid such amount of the reserve fund over and above

$1,000,000, in proportion to the amount he has contributed thereto as compared with the whole amount contributed by policyholders now living." It is further prayed that the portion of the reserve fund not distributed among policyholders be securely invested, etc., for the exclusive benefit of the members of the association and the interest on the same be paid to the treasurer of the association to be paid to such policyholders as are entitled to the same; that all portions of the reserve fund not now invested as hereinbefore provided be called in and invested, or distributed, as hereinbefore provided, and that all interest in real estate be sold and the proceeds of the same be invested, or distributed, as hereinbefore provided.

At the Special Term, the defendant's demurrer was overruled; but on appeal to the Appellate Division, the order of the Special Term was there reversed and the demurrer was sustained. The latter court, in allowing an appeal to this court, certified these questions of law: *First.* Whether the complaint stated facts sufficient to constitute a cause of action. *Second.* Whether the plaintiff has legal capacity to maintain this action, or whether it must be brought, if at all, by the attorney-general of the state under the Code of Civil Procedure. *Third.* Whether the law of 1892, chapter 690, section 56, applies to this action and prohibits the plaintiff from maintaining the same. *Fourth.* Whether it appears on the face of the complaint that there is a defect of parties defendant, in that the acts and omissions therein alleged were the acts and omissions of the officers and directors of the defendant charged with the management of its affairs and that none of such officers and directors are made parties herein.

The cause of action, which the plaintiff attempts to set up in his pleading, sounds in equity; inasmuch as what is sought to be accomplished and the relief which is asked, relate to the enforcement, in behalf of himself and of all the other policyholders, of the performance of the provisions in the contract, or policy, of insurance. If it were necessary that we should, in the disposition of this appeal, answer the first question cer-

tified, as to the sufficiency of the complaint to constitute a cause of action, I should have considerable hesitation in advising an answer in the affirmative. Where, as in this case, the complainant is a member of an association, formed for the purpose of transacting the business of life insurance upon the co-operative or assessment plan, he is to be regarded as an integral part of the corporation. His position is similar to that of a corporator in a corporation and whether such an action as this, in behalf of himself and all others having a like interest in the subject of the action, could be maintained against the corporation of which he is a constituent part, in the absence of other difficulties, is, in my judgment, a very serious question. With respect to it and, also, with respect to the fourth question certified, as to whether there is a defect of parties defendant, in the non-joinder of the officers and directors whose acts are referred to in the complaint in connection with his cause of action, I think their present determination is unnecessary to the complete disposition of this appeal. In the view that I think we must take of the other questions certified to us, and which relate to the capacity of the plaintiff to maintain this action, the discussion of those questions becomes unimportant and, therefore, unnecessary.

It will be observed from a reading of this complaint that this cannot be regarded as an ordinary action to enforce some merely personal obligation; but that the action is sought to be maintained in the common interest of a presumably large body of policyholders and, in its scope, comprehends a more or less serious inteference with methods of corporate management, which appear to have been practiced since 1883, and a necessity for an accounting with respect to the disposition of the vast sums received by the defendant in the course of its corporate existence. The plaintiff is invoking the aid of the court to remedy an alleged grievance of such a nature, in its operation upon the rights of a large body of people, as to approximate it, I might almost say, to a public wrong, committed by this corporation, which owes its existence to, and

derives its powers from, the laws of this state. The serious-
ness of the charges and the magnitude and scope of the relief
demanded, irresistibly, compel us to look at the matter in
the light of what we may find to be the policy of the law.
As suggested previously, there is a great and an obvious
distinction between an ordinary action, where an indi-
vidual seeks a remedy for some violation of his rights and
where there can be an adjustment of the dispute with-
out necessarily, or materially, affecting the rights of others,
and a case like the present one, which would draw after
its determination in the plaintiff's favor, apparently, radi-
cal changes in the management of the affairs of the corpo-
ration and would involve an accounting as to corporate deal-
ings with a great number of other persons. Not that legal
principles are necessarily affected by the character of the liti-
gants, or the magnitude of the sums in controversy; but such
considerations, in connection with those bearing upon corporate
objects and interests, may be found to justify a declaration of
state policy. This is, I recognize, a very important question,
which is presented for our determination, and while that
determination should be approached with a full appreciation
of its consequences in their possible bearing upon private con-
tract rights, nevertheless, we must have in mind how serious
and how grave may be those consequences in their wider
bearing upon this peculiar class of corporations. This brings
us to consider certain declarations which have been made by
the legislature upon the subject of such actions.

If an action had for its object the compelling of the trus-
tees, directors, managers, or other officers of a corporation, to
account for their official conduct, in the management and dis-
position of the property committed to their charge, then it
would have to be brought by the attorney-general in behalf
of the People; or it might be brought by a judgment creditor
of the corporation, under sections 1781 and 1782 of the Code
of Civil Procedure. These sections were not intended to
warrant the attorney-general in bringing the action, if
only private interests were involved; as is evident from the

provisions of section 1808, which limit his authority to cases where, in his opinion, the public interests require such an action. But they may be said to indicate a policy of the law, that the public interests may be concerned and, when they appear to be, that then the action should be within the control of the attorney-general. Unless a private corporation, chartered for certain definite and limited purposes, had exceeded its powers, or unless the case were one coming strictly within the purposes specified in section 1781, the intervention of the People through their attorney-general would not be authorized by the statute. (*People* v. *Lowe*, 117 N. Y. 175.) In 1890, chapter 400 of the Session Laws of that year was passed as, "An act in relation to life and casualty insurance companies, associations and societies organized under the laws of this state;" which provided that "no order, judgment or decree, providing for an accounting or enjoining, restraining, or interfering with the prosecution of the business of any life or casualty insurance company, association or society of this state, or appointing a temporary or permanent receiver thereof, shall be made or granted otherwise than upon the application of the attorney-general, on his own motion or after his approval of a request in writing of the superintendent of the insurance department, except in an action by a judgment creditor; or in proceedings supplementary to execution." The provisions of that statute were embodied in the Insurance Law of 1892, as section 56. In this enactment we have an express declaration of the legislature upon the subject, which may be regarded as voicing a policy of the law. Not long previously to the act of 1890, this court had decided the case of *Uhlman* v. *The New York Life Insurance Company,* (109 N. Y. 421). That was an action for the purpose of obtaining an accounting from the defendant in regard to matters stated in the complaint. The plaintiff had taken out a policy, known as "The Ten Year Dividend System Policy," and the plaintiff alleged in his complaint that the defendant, during the term of the policy, had wrongfully appropriated

the surplus and profits, or a large portion thereof, belonging
to the plaintiff under the policy and had diverted the
same to other purposes than to the benefit of the plaintiff,
and that it had not kept the fund and its accumulations sepa-
rate.    His demand for judgment was that the defendant be com-
pelled to render an account of the names of the parties insured
by it under the system ; the amount of each and every policy
issued ; a detailed account of premiums paid ; the amount of
surplus and profit which each of the policies had earned and
a number of other details in regard to the accumulation and
disposition of such fund.    We held that the action was not
tenable, for reasons which, of course, I do not assume to con-
trol the determination of these issues ; but in the decision, it
was, significantly, said by Mr. Justice Peckham, speaking for
the court : " Upon the theory of the plaintiff every one of the
policyholders of his class has a right of action, such as this,
against the defendant to call it to an account, and to cause it
to give in the trial of the action a detailed account of every
transaction    *    *    *    which took place from the commence-
ment to the termination of the tontine period in regard to those
matters material to be known upon the question of an equi-
table apportionment of the fund.    *    *    *    Of course it is not
to be supposed that each individual policyholder would avail
himself of this right, but the fact that each one might, would
place the company in the power of unscrupulous parties to take
advantage of it for the purpose of endeavoring to levy contribu-
tion from it which it might pay in order to secure freedom to
itself from troublesome, expensive, unnecessary and wholly dis-
ingenuous investigations (and made in numerous suits) into the
affairs of the company and its accounts running through many
years."    That the act of 1890 should soon follow upon this
decision, is significant of the fact that his view was shared in
by the representatives of the People as to such actions.    That
the act was framed to prevent such an intolerable nuisance as
an insurance company would be subjected to, if one or more
of its policyholders might maintain such an action, is evident.

It is plain that an accounting is necessary from this com-

plaint, when its allegations of facts are read; showing, as they do, that, practically, during all the existence of the company, except for two years, the facts complained of have existed and that millions of dollars have been received and disposed of and that a great number of persons have, more or less, shared in its distribution of moneys.  Fully recognizing the necessity of an accounting, the prayer is, " that the total number of policyholders now living be ascertained and the total amount paid by such policyholders to the reserve fund be ascertained and the amount paid by the undersigned to the reserve fund be ascertained and the undersigned be paid such amount of the reserve fund, over and above $1,000,000, in proportion to the amount he has contributed thereto as compared with the whole amount contributed by policyholders now living." Furthermore, if the plaintiff succeeds in obtaining the judgment prayed for, there must result a direct and grave interference with the prosecution of the business of the company. It cannot be said that the enactment of such a law is without good reason, or is against a wise public policy.  There is reason for making a distinction between such insurance companies and other corporations; for the former have characteristics, which entitle them to be regarded as almost public in their nature.  They are unlike private corporations, organized purely for the pecuniary profit of their members, and, therefore, subject to our observations in *People* v. *Lowe*, (*supra*). Their primary purpose is co-operation of individuals in a plan for the mutual insurance of their lives, whereby the cost will be cheapened.  Each member participates in the business results and as there are profits or losses, so is his insurance affected in its cost to him.  Indeed, the objects of life insurance corporations invest them with such a public interest, that the state has placed them within the superintendence of a special department and every consideration militates in favor of the protection, which the state has thrown around these companies, and tends to show the wisdom of the legislation of 1890.

Nor is the act at all in violation of any constitutional right

of the plaintiff, as impairing the obligation of a contract. It furnishes a remedy, as it was said in the opinion below, and prescribes a method of procedure by which that remedy may be applicable to every person situated as the plaintiff is. Touching, as it does, the affairs of insurance corporations, which the state has peculiarly taken within its care and supervision, its enactment was quite within the sound discretion of the legislature, in the emergency which confronted it of the possibility of suits, interfering with the management of the corporate affairs and which might produce hopeless confusion and might impair the efficiency of the company, if not wreck it. The effect of the legislation was not to cut off the rights of a party, but, merely, to prescribe the form of the remedy which he must avail himself of, in the pursuit of his object to compel the corporation to perform acts, or to account as to matters in respect of which it may be alleged to have been neglectful, or wasteful, or mistaken. The plaintiff is not maintaining a purely and essentially private action, with the results of which only himself and the corporation defendant are concerned; but he is maintaining one which concerns a large body of the public and the continued management of the affairs of a peculiar class of corporations which have been the especial objects of the care and watchfulness of the state. It is no hardship to him, and it impairs none of the force of the obligations of the company to him, that he should be compelled to follow the particular procedure declared by statute.

In addition, it may be observed that the contract of insurance contains no obligation as to the management of the defendant's property and secures to him no especial mode of enforcing his rights with respect to its management. There was nothing, in my judgment, to restrict the exercise by the state of a supervisory and restraining power, with respect to actions, which have for their avowed purpose an interference with, and an inquiry into, the management of the affairs of these corporations. The plaintiff had no such vested rights that the legislature, by way of enforcing the obligations of justice, could not interfere by remedial legislation and provide

for a remedy which would be as effectual, as it would be beneficent in its general operation.

If the views, which I think we should adopt upon the question before us, are not correct, then these corporations, chartered by the state as they are for the common benefit of those who wish to co-operate in the business of life insurance, are at the mercy of any member, who, with unworthy or dishonest motives, chooses to attack them and, by threatened interference with their methods or management, may compel them to make a settlement with him, in order to secure, as it was said in the *Uhlman* case, freedom from troublesome, expensive, unnecessary and wholly disingenuous investigations into affairs and accounts running through many years.

In accordance with the conclusions reached in this case, questions two and three of those certified to us are answered as follows, viz.: The plaintiff has not legal capacity to maintain this action and it must be brought, if at all, by the attorney-general of the state of New York, pursuant to the requirements of chapter 690 of the Laws of 1892; which apply to this action and prohibit the plaintiff from maintaining it.

The judgment and order appealed from should be affirmed, with costs.

All concur, except PARKER, Ch. J., and VANN, J., dissenting.

Judgment and order affirmed, with leave to amend complaint, etc.