WEST POINT WATER POWER & LAND IMPROVEMENT COM-
PANY V. STATE OF NEBRASKA, EX REL. P. M. MOODIE,
COUNTY ATTORNEY.

FILED FEBRUARY 4, 1896.*   No. 6064.

1. **Mills and Mill-Dams:** WATER-COURSES: FISHWAYS. Persons erect-
ing and maintaining dams for milling purposes in the streams of
this state do so with the implied obligation to maintain adequate
fishways for the passage of fish from the lower to the higher level
of such streams and their tributaries.

2. **Powers of State:** POLICE POWER. The reserved powers of the state,
including the police power, are inalienable, and cannot be surren-
dered or bartered away by the legislature.

3. **Water-Courses:** PRESERVATION OF FISH. The preservation of the
fish in the streams of the state is a proper function of government.

4. **Mandamus:** MILL-DAMS: FISHWAYS. The duty enjoined upon the
owner of mill-dams to construct and maintain fishways (see Crimi-
nal Code, sec. 87a) is designed to promote the public welfare, and
may be enforced by *mandamus* on the relation of the county attor-
neys of the several counties.

ERROR from the district court of Cuming county. Tried
below before NORRIS, J.

The opinion contains a statement of the case.

*J. C. Crawford,* for plaintiff in error.

In the argument reference was made to the following
cases: *State v. Franklin Falls Co.,* 6 Am. Rep. [N. H.], 513;
*Ryan v. Brown,* 100 Am. Dec. [Mich.], 154; *City of Janes-
ville v. Carpenter,* 20 Am. St. Rep. [Wis.], 123; *Jones v. Pet-
tibone,* 2 Wis., 308*; *Arnold v. Elmore,* 16 Wis., 509*; *Yates
v. Judd,* 18 Wis., 118*; *Walker v. Shepardson,* 4 Wis., 495;
*Wisconsin River Improvement Co. v. Lyons,* 30 Wis., 61; *De-
laplaine v. Chicago & N. W. R. Co.,* 42 Wis., 214; *Cohn v.
Wausau Boom Co.,* 47 Wis., 314; *Stevens Point Boom Co. v.
Reilly,* 46 Wis., 237; *Hazeltine v. Case,* 46 Wis., 391.

*Publication withheld pending rehearing. See following case, 49
Neb., 223.

*M. McLaughlin,* also for plaintiff in error.

*P. M. Moodie, contra:*

Plaintiff in error owns its mill-dam on the condition that it will provide a fishway whereby all fish may readily pass over or around it. (*Holyoke v. Lyman,* 15 Wall. [U. S.], 500; *Town of Stoughton v. Baker,* 4 Mass., 522*; *Burnham v. Webster,* 5 Mass., 266; *Nickerson v. Brackett,* 10 Mass., 212; *Cottrill v. Myrick,* 12 Me., 229; *Vinton v. Welsh,* 9 Pick. [Mass.], 92; *Commonwealth v. Chapin,* 5 Pick. [Mass.], 204.)

The legislature has no right to bind itself not to exercise its powers for the preservation of a common right. (*Stone v. State of Mississippi,* 101 U. S., 814; *Boston Beer Co. v. State of Massachusetts,* 97 U. S., 25; *Boyd v. State of Alabama,* 94 U. S., 645; *Metropolitan Board of Excise v. Barrie,* 34 N. Y., 657.)

The plaintiff in error could acquire no prescriptive right, as against the public, to maintain a mill-dam without a fishway. (*Parker v. People,* 111 Ill., 581.)

POST, C. J.

This was an application for a writ of *mandamus* to the district court for Cuming county on the relation of P. M. Moodie, as county attorney, to require the respondent therein, plaintiff in error, to construct a suitable fishway whereby fish may readily pass over or around a dam maintained by said respondent in the Elkhorn river. An answer was filed by the respondent, in which is contained the following admission: "It admits that the respondent owns and maintains a mill-dam across said Elkhorn river at or near the city of West Point and within said county of Cuming, and that the said respondent has never provided, and has not at the present time, a suitable fishway, nor any fishway whatever, whereby fish may pass over or around said mill-dam." The other allegations of the an-

swer are, in substance, that the land upon which said dam is situated is private property; that the construction of said dam was authorized by the territorial legislature in the year 1867, and that the respondent has acquired the right to maintain it as at present constructed by adverse user; that the Elkhorn river is a private, unnavigable stream, and to require the respondent to construct a fishway would be to damage its property, within the prohibition of the state constitution. To this answer a demurrer was interposed by the relator and sustained by the court. The respondent refusing to plead further, a peremptory writ of *mandamus* was awarded against it in accordance with the prayer of the petition, and the cause removed into this court for review by the respondent.

The provision of statute relating to the subject involved is found in section 1 of the act amendatory of prior acts, approved April 4, 1887 (see Criminal Code, sec. 87*a*), viz.: "It shall also be unlawful for any person, association of persons, or corporation to place or establish any obstruction across any stream of water in this state that shall prevent the free passage of fish along said stream; *Provided*, That all persons, associations of persons, or corporations erecting, owning, or maintaining a mill-dam across any stream in this state shall, at his or its own expense, construct and at all times maintain, subject to the approval of the fish commission, a suitable and substantial fishway whereby all fish passing along said stream can readily pass over or around said dam. Public waters, within the meaning of this section, shall embrace all lakes, ponds, rivers, creeks, bayous, and streams, except private artificial ponds or ponds subject to the exclusive dominion of a single ownership." (Session Laws, 1887, p. 662, ch. 107, sec. 1.) The courts of this country have frequently been called upon to give effect to acts of this character and have, it is believed, in every instance sustained the power of the legislature over the subject. (See *Hooker v. Cummings*, 20 Johns. [N. Y.], 90; *Town of Stoughton v. Baker*, 4 Mass., 522; *Burnham v. Webster*, 5 Mass.,

266: *Commonwealth v. McCurdy*, 5 Mass., 324; *Nickerson v. Brackett*, 10 Mass., 212; *Commonwealth v. Chapin*, 5 Pick. [Mass.], 199; *Vinton v. Welsh*, 9 Pick. [Mass.], 92; *Commonwealth v. Essex Co.*, 13 Gray [Mass.], 248; *Cottrill v. Myrick*, 12 Me., 229; *Weller v. Snover*, 42 N. J. Law, 341; *Parker v. People*, 111 Ill., 581; *Holyoke Water-Power Co. v. Lyman*, 15 Wall. [U. S.], 500.) In the case last cited, which involved a statute of Massachusetts after which ours appears to have been modeled, the subject was considered in all its phases, resulting in the conclusion that while a grant authorizing the use of the water of a stream for mill purposes is a vested right, such right is subject to legislative control, and that one erecting a dam in a stream annually frequented by fish, does so under the implied obligation to maintain sufficient openings to permit the passage of fish at all proper seasons. In that case Mr. Justice Clifford, after citing with approval the opinion of Chief Justice Shaw in *Commonwealth v. Essex Co.*, *supra*, says: "From the earliest times the right of the public to the passage of fish in rivers and the private rights of riparian proprietors, incident to and dependent on the public right, have been subject to regulation of the legislature; that the mode adopted by the legislature, whether by public or private acts, to secure and preserve such rights, has been by requiring, in the erection of dams, such sluices and fishways as would enable these migratory fish, according to their known habits and instincts, to pass from the lower to the higher level of the water occasioned by such dam, so that, although their passage might be somewhat impeded, it would not be thereby essentially obstructed." And in *Commonwealth v. Chapin*, *supra*, the same principle is recognized by Chief Justice Parker in the following language: "This common law right of several fishery, in the owners of lands bordering on rivers not navigable, is subject to a reasonable qualification, in order to protect the rights of others, who in virtue of owning the soil have the same right, but might lose all advantage from it if their neighbors below them,

on a stream or river, might with impunity wholly impede the passage of fish into the lakes or ponds, where they, by instinct, prepare for the multiplication of the species. This restriction is founded upon that universal principle of every just code of laws, *sic utere tuo ut alienum non lædas." State v. Franklin Falls Co.*, 49 N. H., 240, to which we are referred in support of the opposing view, is not authority for the contention of the plaintiff in error. Indeed, it may be said to sustain the doctrine of the cases above cited, since the propositions therein asserted are (1) that the maintaining, in an unnavigable river, which is the outlet of a large inland lake, of a dam without a fishway so as to obstruct the passage of fish from the sea to the lake, is indictable at common law; (2) no right will be acquired as against the state by the obstruction of a public fishery for more than twenty years under a claim of right, where such obstruction originated without right.

Regarding the plaintiff in error's reliance upon a prescriptive right to maintain its dam without making provision for the passage of fish, and upon the fact that the construction of the dam was authorized by the territorial legislature, it is sufficient that the reserved powers of the state, including the right to conserve and promote the public welfare at the expense of private interests, denominated the police power, is inalienable, and cannot be surrendered or bartered away by the legislature. (*Parker v. People, supra; Alger v. Weston*, 14 Johns. [N. Y.], 231; *People v. Morris*, 13 Wend. [N. Y.], 329; *Metropolitan Board of Excise v. Barrie*, 34 N. Y., 657; *Stone v. Mississippi*, 101 U. S., 814.)

Lastly, it is urged that the law recognizes no common right of fishery in the streams of this state; that such right belongs exclusively to the owners of the soil; that it is, in short, a private right only, in which the state is not interested, and that the writ of *mandamus* should not, therefore, have been allowed on the relation of the county attorney. In *Attorney General v. Albion Academy*, 52 Wis., 469, the rule is thus stated: " 'The question whether the

attorney general can sue, or whether the suit must be brought by some private party, depends upon whether the injury sought to be redressed is public in its nature, affecting public interests, or whether it is merely private, affecting private rights and interests only. In the latter case the attorney general cannot sue; in all others he can. In case of a wrong which is also a public as well as a private injury, the attorney general may sue in respect to the public injury, although a private person may also sue in respect to his private injury.'" And, as said by this court in *Smiley v. MacDonald*, 42 Neb., 5, the test of public utility is whether the particular regulation involved has some relation to the public welfare and whether such is in fact the end sought to be attained. That the declared purpose of the act, viz., the preservation of the fish in our streams, is a proper function of the state government as tending directly to promote the public welfare, is a proposition distinctly recognized by authority, including the cases above cited. The provision for the construction of fishways must therefore be regarded as a duty enjoined upon persons and corporations maintaining dams in the streams of the state, in the interest of the public at large. It follows that the writ was properly allowed on the relation of the county attorney, and that the judgment of the district court should be

AFFIRMED.