49 223
52 777

WEST POINT WATER POWER & LAND IMPROVEMENT COMPANY V. STATE OF NEBRASKA, EX REL. P. M. MOODIE, COUNTY ATTORNEY.

FILED OCTOBER 6, 1896. No. 6064.

1. **Pleading: JUDGMENT.** "It is a well established rule of pleading, under the Code as well as at common law, that a judgment upon demurrer must be against the party whose pleading was first defective in substance, and that a demurrer searches the entire record

and must go against the first error." (*Hower v. Aultman*, 27 Neb., 251; *Oakley v. Valley County*, 40 Neb., 900.)

2. **Water-Courses: FISHWAYS: CONSTITUTIONAL LAW: STATUTES.** The legislature of the year 1875 passed a law entitled "An act to prohibit the catching of game fish in certain cases." (See Session Laws, 1875, p. 23.) The act referred to was the subject of amendment and repeal by the legislative body which convened in 1879, the title of the amendatory act being as follows: "An act to amend sections one, two, and three of an act entitled 'An act to prohibit the catching of game fish in certain cases.'" (Session Laws, 1879, p. 71.) During a session of the legislature convening in 1887 an act was passed under the following title: "An act to amend section one of 'An act to amend sections one, two, and three of an act entitled "An act to prohibit the catching of game fish in certain cases."'" (Session Laws, 1887, p. 662, ch. 107.) Among other things, this latter act made it obligatory upon persons or corporations owning, erecting, or maintaining a mill-dam across any stream of water in the state to construct and keep suitable fishways for the passage of fish over and around the dam. *Held*, That the portion of the act last referred to which prescribed the duty of construction, etc., of a fishway was a subject not expressed in the title of the act, and hence the act, to the extent it was attempted to legislate therein upon such subject, was within the constitutional inhibition that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." This is equally true whether the act be viewed as an amendatory one, as it is purported to be, or as an independent act, complete within itself.

REHEARING of preceding case, 49 Neb., 218.

*J. C. Crawford* and *M. McLaughlin*, for plaintiff in error.

*P. M. Moodie, contra.*

HARRISON, J.

In this, an action instituted in the district court of Cuming county, the relator, the county attorney of said county, asked the issuance of a writ of *mandamus* ordering the respondent to make and keep a suitable fishway for the passage of fish over and around a mill-dam owned and maintained by it in the Elkhorn river. To an answer filed by the respondent, the relator filed a general demurrer, which was sustained and, the respondent electing not to plead further, a peremptory writ of *mandamus*

was granted and issued against it, as prayed in the application or petition. The case was presented to this court for review by the unsuccessful party in the district court. The result of a hearing here was the affirmance of the action of the district court. For opinion then announced see preceding case, 49 Neb., 218. A motion for rehearing was filed and, on consideration, granted, and the cause has been again submitted to this court for examination and decision.

At this hearing a question was raised and discussed which was not presented, and to which no reference was made at the former hearing, viz., that the act of the legislature, under the provisions of which this action was instituted, and by which it is claimed the duty was cast upon the respondent of performing the acts sought to be required by this proceeding, was unconstitutional, as violative of that portion of our constitution wherein it is prescribed that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." (Constitution, sec. 11, art. 3.) To determine this question it will be necessary to examine the course of legislation on the subject involved in the action, to review the history of the act or acts of the law-making body, which it is urged the respondent had failed to fulfill.

The original enactment was passed during the year 1875 (see Session Laws, 1875, p. 23), and was entitled "An act to prohibit the catching of game fish in certain cases." Section 1 was as follows: "That it shall be unlawful to catch, interfere with, or destroy by the use of any seine, dip-net, set-net, trammel-net, or basket, any black bass, willow bass, pickerel, pike, trout, jack-salmon, perch or any other game fish, in any lake, pond, slough or other body of water lying in whole or in part within the state of Nebraska, which does not at all seasons of the year have a natural inlet and outlet from and into some river, creek or other stream of water, without first having obtained the consent of the owners of the land upon which is situated any such lake, pond, or

slough as aforesaid." Section 2 provided the penalty or punishment to be adjudged against any person doing any of the things prohibited by the act, and section 3 gave justices of the peace jurisdiction of all cases arising under the provisions of the act.

The foregoing act was the subject of repeal and amendment in 1879 (see Session Laws, 1879, p. 71), the title to the repealing act being as follows: "An act to amend sections one, two, and three of an act entitled 'An act to prohibit the catching of game fish in certain cases.'" In section 1 of this amendatory act it was made unlawful for any person or persons to catch, kill, injure, or destroy any fish in any river, creek, brook, stream, lake, pond, bayou, or other body of water in this state with a seine, trammel-net, gill-net, pound net, basket, or weir, or in any other manner, except with a hook and line, spear and fork, and made unlawful for any. person to set or drag a seine or net, or any of the prohibited appliances for catching fish, in any of the designated waters, and authorizing any person finding any of them so set to take them up, and provided that the act shall not be construed to prohibit the owners of private ponds or streams from taking fish therefrom in any manner they choose. Section 2 provided: "It shall be unlawful for any person or persons to injure, disturb, or destroy any hatching-box, hatching-house, or pond used for hatching or propagating fish, or to injure or destroy or disturb any spawn, or fry, or fish in any hatching-box, hatching-house or pond or stream; *Provided*, That the fish commissioners of this state may take, or cause to be taken, any of the fish named in this section for the purposes of propagation, or stocking the waters of this state." And in section 3 it was stated: "It shall be unlawful for any person or persons to catch, injure, kill, or destroy any California salmon, land-locked salmon, trout, shad, white-fish, or carp, which shall have been planted or placed in any waters of this state by the fish commissioners, or by private persons." By each section the punishment for the acts prohibited by its

terms was provided, and by section 4 the sections of the act of 1875 were repealed in terms.

During the legislative session of 1887 an act was passed which purported to amend section 1 of the amendatory act of 1879 (see Session Laws, 1887, p. 662) with the following title: "An act to amend section one of 'An act to amend sections one, two, and three of an act entitled "An act to prohibit the catching of game fish in certain cases." ' " Section 1 of this act of 1887 made it unlawful for any person to catch, kill, injure, or destroy any fish in any public water in this state or in the Missouri river along the eastern boundary of this state, in any manner except by the use of hook and line, and the use of seines, nets, and other devices other than the hook or line were prohibited and made unlawful. It was further provided, among other things: "It shall also be unlawful for any person, association of persons, or corporation to place or establish any obstruction across any stream of water in this state that shall prevent the free passage of fish along said stream; *Provided*, That all persons, associations of persons, or corporations erecting, owning, or maintaining a mill-dam across any stream in this state shall, at his or its own expense, construct and at all times maintain, subject to the approval of the fish commission, a suitable and substantial fishway whereby all fish passing along said stream can readily pass over or around said dam. Public waters, within the meaning of this section, shall embrace all lakes, ponds, rivers, creeks, bayous, and streams, except private artificial ponds, or ponds subject to the exclusive dominion of a single ownership. Every violation of any provision of this section shall be a misdemeanor, and every person, association, or corporation convicted of an offense under this section shall pay a fine of not less than twenty-five (25) dollars and costs of prosecution, or imprisonment in the county jail not less than ten days or until such fine and costs are paid.   *   *   *   Each day any mill-dam or other obstruction shall be continued without such fish-

way shall be deemed and taken as a separate offense under this act."

It needs no discussion or argument to establish that the subject-matter of the portion of the act of 1887, just quoted, which refers to and prescribes the duty of persons or corporations owning, erecting, or maintaining a mill-dam across any stream of water in the state to construct and keep a suitable fishway for the passage of fish over or around the dam is not included or expressed in the title of the act, which, in its words and substance, is as follows: "An act to prohibit the catching of game fish in certain cases," as it appeared entitling and governing the subject-matter of the original enactment and was retained and used throughout the course of the amendments attempted by the legislative body. The portion of the act of 1887 alluded to is clearly foreign to the subject of the title of either the original or amendatory acts, and hence void and of none effect, and this is equally true whether the acts in question be in view either as independent acts on the subject of the title, complete in themselves, or as amendatory as the last in point of time purported to be.

It will be remembered that the judgment in the cause in the district court was based upon a ruling sustaining a general demurrer to the answer of respondent. "It is a well established rule of pleading, under the Code as well as at common law, that a judgment upon demurrer must be against the party whose pleading was first defective in substance, and that a demurrer searches the entire record and must go against the first error." (*Hower v. Aultman*, 27 Neb., 251, and cases cited. See, also, *Oakley v. Valley County*, 40 Neb., 900.) The petition in this case being a statement of a cause of action having its source or basis in a statute in itself unconstitutional, and therefore void, did not state a cause of action, and, applying the rule of pleading just referred to, the judgment should have been favorable to the respondent and not the petitioner; hence the former affirmance by this court of the

judgment of the district court must be set aside, the judgment of the district court reversed, and, as there can be no amendment of the petition which will be of any avail, the action will be dismissed.    The questions which were considered and decided at the former hearing of the cause in this court are unnecessary to a final determination and disposition of the case and need not now be reexamined.

REVERSED AND DISMISSED.