STATE, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY and others, imp., Appellants.

*May 18—June 5, 1908.*

*Corporations: Reclaiming misapplied assets: Removal of officers: Action by whom brought: "Real party in interest:" State and attorney general: Annulling franchise granted by void ordinance: Street railway companies: Examination of adverse party, when not allowed.*

1. Sec. 3239, Stats. (1898), does not conflict with sec. 2605 (requiring every action to be prosecuted in the name of the real party in interest), but merely declares that the action for the relief mentioned shall be entertained by the court when brought by any plaintiff therein described if he is the real party in interest.

2. The state is not "the real party in interest" so as to entitle it, or the attorney general in its name, under sec. 3239, Stats. (1898), to maintain an action to reclaim misapplied assets of a private corporation. The right of action in such case is primarily in the corporation itself and can be exercised only by it, except in those cases where a stockholder or a creditor may apply to a court of equity for protection, in the case of charitable or eleemosynary, and perhaps municipal, corporations, and possibly in a case where a corporation charged with a duty to the public might by dissipation of its assets or property disable itself from performing that public duty.

3. The cause of action for the suspension or removal of recreant officers of a private business corporation is primarily in the corporation itself, and the state has no legal interest in the question such as would authorize it, under sec. 3239, Stats. (1898), to maintain an action for that purpose.

[4. Whether it would be competent for the legislature to declare a public policy that the state, by reason of its interest in the taxability of the corporate assets or to regulate a corporation's charges with relation to its real investment or the like, should have a right to institute suit to enforce the primary right of the corporation to reclaim misapplied assets or remove unsuitable or misbehaving officers, is not determined.]

5. In respect to the commencement of actions there is a distinction between the power of the state and the power of the attorney general. The latter can bring and maintain an action *ex officio* and *sua sponte* only when and in the manner authorized by statute.

State v. Milwaukee E. R. & L. Co. 136 Wis. 179.

6. There is no statute in this state authorizing the attorney general to institute an action to restrain a street railway company from exercising any rights under, and to set aside and annul, a franchise granted to it either by the state or through the medium of a city council. Such an action, if it can be maintained at all, must be brought by the state.

[7. Whether an action in equity can be maintained, even by the state, to restrain the unlawful exercise of franchises ostensibly granted by a void ordinance, or whether the action must be in the nature of *quo warranto*, is not determined.]

8. Where it is apparent that there is no proper judicial proceeding in aid of which the court is entitled to the information to be obtained by an examination of parties under sec. 4096, Stats. (1898), such examination should not be allowed; and the court should dismiss the ostensible action when the futility of the attempt to institute it is made manifest.

APPEALS from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

This was an action commenced by the attorney general without special authority and without leave of any court against numerous defendants who may be classified as follows: (1) The railway company, hereinafter called the corporation; (2) several directors of that company who were such in 1899 and 1900 and also at the time of the commencement of the suit; (3) several persons, some of them included in the second class, who were and still are directors of the North American Company; (4) *Fred Vogel, Jr.,* who was a director of the North American Company at the commencement of the action but not at the time of the acts complained of in 1899 and 1900; (5) the North American Company; and (6) several persons who were mayor and aldermen of the city of Milwaukee in 1899 and 1900.

Attempted service of summons on all of said defendants in the month of August, 1907, having been made, the plaintiff gave notice of examination under sec. 4096, Stats. (1898), of those in Wisconsin, and filed an affidavit that, in order to enable it to plead, an examination of said persons was necessary. It set forth on information and belief

that in the months of December, 1899, and January, 1900, the defendants constituting the directors of the corporation unlawfully and by collusion paid over large amounts of the corporation's money or property to the defendant North American Company and its directors which was intended to be and was unlawfully paid over to the defendants, who were then mayor and several aldermen of the city of Milwaukee, whereby was induced the granting of an amended and extended franchise under which the corporation has since operated its street railway business in Milwaukee. Plaintiff asserted as the general nature of this action (1) to compel the defendant directors and officers of the corporation to account for their said official conduct in the management and disposition of its funds; (2) to compel the defendant directors of the corporation and also the defendant directors of the North American Company to account for their official conduct in management and disposition of the funds and property of that corporation; (3) to compel both such directors to pay to the corporation all sums of money and value of all property which any of them had acquired to himself or transferred to others or had lost or wasted by any failure of duty; (4) to suspend the said defendant officers of the corporation for abuse of their trust; (5) to remove said defendant directors and officers of the corporation for gross misconduct; (6) to set aside all alienations of property of the corporation made by said defendant directors and officers contrary to the provisions of law or for purposes foreign to the lawful business and objects of said corporation in all cases where the person receiving the property so alienated knew the purpose; (7) to compel the defendant directors and officers of the corporation and also the defendant directors and officers of the North American Company to account for all funds and property illegally and fraudulently obtained and used by them in fraudulently and corruptly securing the franchise aforesaid of January 2,

1900; (8) to compel said defendants mayor and aldermen to account for all funds and property of the corporation illegally or fraudulently paid to them for said purpose and to disclose the names of all persons making any such payment and the time, place, and circumstances thereof; and (9) to restrain the defendant corporation from exercising any rights under, and to set aside, vacate, and annul, the said franchise ordinance of January 2, 1900.

The corporation, the several directors thereof, *Fred Vogel, Jr.*, director of the North American Company, the mayor, each separately, and the several defendant aldermen together, filed petitions with the circuit court praying it to adjudge and determine that the plaintiff be not entitled to such or any examination or discovery as against the petitioners and that the notice and subpœna be suppressed; each of said petitions asserting that all cause of action for accounting or recovery of money or property was barred by the statute of limitations. These petitions were all denied, and the same defendants, respectively, appeal from the orders of denial.

For the appellant the *Milwaukee Electric Railway & Light Company* there was a brief by *Miller, Mack & Fairchild*, and oral argument by *George P. Miller*.

For the appellants *Rose* and others there was a brief by *Ryan, Ogden & Bottum*, and oral argument by *Hugh Ryan*.

For the appellant *Pfister* there was a brief by *Quarles, Spence & Quarles*, and oral argument by *T. W. Spence*.

For the respondent there were briefs by the *Attorney General, Russell Jackson*, deputy attorney general, and *Franz C. Eschweiler*, special district attorney, and oral argument by *Mr. Jackson* and *Mr. Eschweiler*.

Dodge, J. The attorney general asserts that his cause of action is that declared or created by sec. 3237, Stats. (1898), and placed in the state, to be exercised by the attorney gen-

eral, by sec. 3239, Stats. (1898). These statutes have their origin in the legislation of New York (part 3, ch. 8, tit. IV, §§ 33, 35, N. Y. R. S. 1829), enacted in response to the opinion, or doubt, of Chancellor KENT that no power of supervision or control over other than charitable corporations was vested in the court of chancery. *Att'y Gen. v. Utica Ins. Co.* 2 Johns. Ch. 371. Their purpose was to confer new jurisdiction on the court. In this state, apparently, Chancellor KENT's doubt of the power of the court has not been considered serious. In *Gores v. Day,* 99 Wis. 276, 74 N. W. 787, it is said: "Sec. 3237, R. S. 1878, does not materially add to the jurisdiction of the court; that existed under its general equity powers." The same idea was reaffirmed most definitely in *Harrigan v. Gilchrist,* 121 Wis. 127, 293, 99 N. W. 909, citing *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57. However, it is now beyond debate that the circuit courts are vested with such jurisdiction and that the statutes in question were framed for the purpose of declaring it. By sec. 3239 the courts are required to exercise that jurisdiction when moved thereto by the attorney general in the name of the state, by a creditor or by a managing officer of the corporation, but this category is not exclusive, for the action may equally be instituted by a member or stockholder. *Gores v. Day, supra; Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 256, 75 N. W. 964; *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69; *Brahm v. M. C. Gehl Co.* 132 Wis. 674, 112 N. W. 1097. Counsel for plaintiff contend, however, that such section does expressly empower the state to bring the action whenever the relief described in sec. 3237 is sought. If such be the meaning and purpose, then the section equally authorizes a creditor to sue in all cases. There is no difference in the language in its application to one or the other. But this court has declared that it does not authorize a creditor to sue unless he has a direct personal interest in the relief sought. *Killen v. Barnes,*

106 Wis. 546, 82 N. W. 536. But the plaintiff's contention that the statute is to be so construed is directly contradicted both in New York and Wisconsin. *People v. Booth,* 32 N. Y. 397; *People v. A. & S. R. Co.* 57 N. Y. 161; *People v. Ingersoll,* 58 N. Y. 1; *People v. B., F. & C. I. R. Co.* 89 N. Y. 75, 93; *People v. Lowe,* 117 N. Y. 175, 191, 22 N. E. 1016; *Swan v. Mut. R. F. L. Asso.* 155 N. Y. 9, 18, 49 N. E. 258; *Att'y Gen. ex rel. Saunders v. Albion Academy,* 52 Wis. 469, 9 N. W. 391. These decisions fully sustain the view that sec. 3239 evinces no legislative purpose in conflict with sec. 2605, Stats. (1898), commanding that every action shall be prosecuted in the name of the real party in interest, but merely declares that the action for the relief mentioned shall be entertained by the court when brought by either of the kinds of plaintiff described when he is the real party in interest; in other words, when the right to the relief is in him. It would be subversive of all principle to permit a creditor to demand removal of officers for misconduct which in no wise affected his interests or even to call them to account or to reclaim assets when the corporation is entirely solvent and the creditors' rights not jeopardized, or when the corporation is competent and ready to enforce such right. So, also, it is anomalous for the state to sue to protect merely private rights which the real owners are entirely competent to protect either with or without suit, or to surrender them if they choose. Such mere sentimental or remote interest as the whole public may have that corporate officers, or other persons, behave well, or that private corporations, or indeed individuals, do not squander their own money, is not that sort of right which constitutes the state the "real party in interest" in a suit to relieve a private corporation of recreant officers or to recall assets to the treasury of a corporation or the pockets of an individual.

It is not here denied or affirmed that the legislature, which is empowered to declare the public policy, might by appropri-

ate legislation assert a public interest in some such situation sufficiently direct to warrant the state to bring suit. The one case in New York relied on by respondent turned upon a statute to which such effect has been given by construction. *People v. Ballard,* 134 N. Y. 269, 32 N. E. 54. There the attorney general brought suit for removal of officers of a private corporation and to set' aside transfer of entire assets to a foreign corporation against wishes of some stockholders, and his right to do so under their equivalent for our sec. 3239 was assailed. After equal division in one branch of the court of appeals, the other branch, by majority of one, sustained his right under another and later statute (sec. 1808, Bliss's Code) authorizing him to bring such action "if in his opinion the public interests require that an action be brought." This was held to be a legislative declaration of policy and to require the entertainment of the action by the court without inquiry into the state's actual interest. We have no similar statute in Wisconsin to require consideration of either its validity or its construction. Another illustration of such legislative regulation of the state's right to sue to protect or enforce primary rights of individuals is presented and considered in *Swan v. Mut. R. F. L. Asso., supra,* and *Greeff v. Equitable L. Assur. Soc.* 160 N. Y. 19, 54 N. E. 712.

Whether it might be competent for the legislature to declare a public policy that the state, by reason of its interest in the taxability of the corporate assets or to regulate such a corporation's charges with relation to its real investment or the like, shall have a right to institute suit to enforce the primary right of the corporation to reclaim misapplied assets or remove unsuitable or misbehaving officers, we need not now decide. It is clear upon authority of all the decided cases in New York and Wisconsin that sec. 3239 had no such purpose.

That the uncovery of assets and the reclamation thereof

either from the recipient or the recreant officers is a right
vested in the corporation is too plain for debate and is uni-
versally declared by authority.    *U. S. v. U. P. R. Co.* 98 U.
S. 569; *Jenkins v. Bradley,* 104 Wis. 540, 552, 80 N. W.
1025; *Brahm v. M. C. Gehl Co.* 132 Wis. 674, 112 N. W.
1097.    An action for that purpose rests in the corporation
and can be instituted only by it except that, when the cor-
poration by its ordinary machinery and officers refuses to
act, or is prevented by the adverse interests of those officers,
a stockholder, as a *cestui que trust* of the corporation, may
apply to a court of equity to practically coerce the corpora-
tion to bring such suit, and in such action may proceed to the
enforcement of the right.    *Jenkins v. Bradley, supra; Luther
v. C. J. Luther Co.* 118 Wis. 112, 126, 94 N. W. 69; *Figge
v. Bergenthal,* 130 Wis. 594, 109 N. W. 581, 110 N. W. 798.
Another exception is in case of insolvency or threatened in-
solvency, when the creditor of the corporation becomes the
real *cestui que trust* and may apply to a court of equity to ac-
complish the same results as above stated for his protection.
*South Bend C. P. Co. v. Geo. C. Cribb Co.* 97 Wis. 230, 72
N. W. 749; *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536;
*Boyd v. Mut. F. Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N.
W. 171; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909.
But, except in the case of charitable or eleemosynary, and
perhaps municipal, corporations (though the latter exception
is denied by some authority, *People v. Booth,* 32 N. Y. 397;
*People v. Ingersoll,* 58 N. Y. 1), where the general public are
interested in the application of the funds, obviously the state
has no legal interest in the management or disposal of the
funds of the corporation.    Private corporations are organ-
ized for private profit, and, except as to their members and
creditors, are as free to exercise their judgment over expen-
ditures, nay even the donation, of their funds as an individ-
ual.    *Figge v. Bergenthal, supra,* p. 616, 109 N. W. 581,
110 N. W. 789; *Interstate Commerce Comm. v. C. G. W. R.*

*Co.* 209 U. S. 108, 28 Sup. Ct. 493.   The state, which is but another name for the general public, has no interest therein, save possibly in the case where a corporation charged with a duty to the public, as is this, might by dissipation of its assets or property disable itself from performing that public duty, a result which is not suggested in any way in this case and which, indeed, is pretty completely refuted by the showing that for seven years since the alleged wrongful expenditures the corporation has continued to perform its public function of operating a street railway.   Authorities supporting this view are numerous, and in them will be found full discussion of that sort of interest which will qualify the state to sue in equity as plaintiff.   *U. S. v. U. P. R. Co.* 98 U. S. 569; *People v. Booth, supra; People v. A. & S. R. Co.* 57 N. Y. 161; *People v. Ingersoll,* 58 N. Y. 1. Plaintiff has succeeded in finding no instances where a contrary view has been decided by courts of last resort, except the *Ballard Case* already mentioned, but has cited us to two decisions of the supreme court of New York, both of them reviewed on appeal in the court of appeals and deprived of all authority by the expression of contrary views in that court.   We think these authorities are sustained by very obvious reason and that the rule thereof is sound, and that, so far as the present action is addressed to the subject of reclamation of assets, the state is without interest to maintain it.

The cause of action for the suspension or removal of recreant corporate officers is hardly less clearly primarily in the corporation.   Such wrongful conduct is an injury to the corporate entity and, through it, to its stockholders, or, if insolvent, to its creditors.   If the policy such officers pursue is wasteful of its property the corporation suffers the pecuniary loss.   If such conduct is so illegal as to constitute an abuse or usurpation of corporate franchises outside its charter, the corporation may thereby be rendered a wrongdoer and subject to the penalties denounced by statute.   It is also obvious

that the state or public can have no direct interest in the question whether such officers should be removed. It is provided by statute with remedies adequate to all possible public interest. It may see to it that the offices are not usurped and illegally held so that the corporation itself cannot be charged with the officers' acts. Subd. 1, sec. 3466, Stats. (1898), expressly provides this remedy. If the officers are legally in place, then their acts are the acts of the corporation and the state is given ample remedy against it by sec. 3241, Stats. (1898), in case their acts lead the corporation into any of several situations which the legislature has catalogued as affecting public interest, namely: (1) In case it shall offend against any provision of law under which it shall have been created, altered, or renewed; (2) violated any provisions of law by which it shall have forfeited its charter by abuse of its powers; (3) whenever it shall have forfeited its privileges or franchises by failure to exercise its powers; (4) when it shall have done or omitted any act which amounts to a surrender of its corporate rights, privileges, or franchises; and (5) when it shall exercise franchises or privileges not conferred upon it by law. If, on the other hand, the acts of such officers are not in accordance with the wishes of the corporation—that is, of its stockholders,—proper remedy rests in some of those whose rights are outraged to either restrain the action or remove the officers. It has been decided that only where the action of the corporation is wilful should the attorney general be permitted to bring suit to annul its charter under sec. 3241 (*State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512), and while the corporation, technically, may be responsible for what its duly elected officers do within their powers, obviously it is not the policy that the state should intervene until the corporation has had reasonable opportunity to restrain or remove such officers and has by silence or neglect become committed to approval of their acts, in which event

it shall have its remedy against the corporation itself. The authorities are well-nigh universal to the proposition that the public has no legal interest in the question of suspension or removal of officers of private business corporations (*U. S. v. U. P. R. Co.* 98 U. S. 569; *People v. Lowe,* 117 N. Y. 175, 191, 22 N. E. 1016; *Att'y Gen. ex rel. Saunders v. Albion Academy,* 52 Wis. 469, 9 N. W. 391); and in that view we now concur.

There remains one other general purpose of this action asserted by the state, namely, to restrain one defendant, the corporation, from exercising any rights under, and to set aside and annul, the franchise granted January 2, 1900, alleged to have been induced by bribery. Counsel concede that this is not within any purpose authorized by sec. 3237, and seem to concede that of itself it is not authorized at all by any statute, but claim that it might be accorded as ancillary and supplementary in association with the other relief sought. If we take the attorney general at his word, the subject might be easily disposed of, since we have found that the action cannot be maintained to accomplish any of the substantive forms of relief to which this is considered ancillary. However, it is set up by the affidavit with as much apparent reliance as any of the other general purposes of the action and should perhaps be considered. This court has often declared that the question of the validity of a franchise granted either by the state or through the medium of a city council to a street railway company can be questioned only in an action in the nature of *quo warranto* brought by the state. *Ashland v. Wheeler,* 88 Wis. 607, 60 N. W. 818; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 39, 69 N. W. 794; *Stedman v. Berlin,* 97 Wis. 505, 509, 73 N. W. 57; *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 517, 83 N. W. 851; *Allen v. Clausen,* 114 Wis. 244, 249, 90 N. W. 181; *Beloit, D. L. & J. R. Co. v. Macloon, post,* p. 218, 116 N. W. 897. This declaration would of course in terms

exclude a suit in equity, even by the state, to restrain the unlawful exercise of franchises ostensibly granted by a void ordinance. Whether the court in using that language in the above cases meant such exclusion it is not necessary now to ascertain. At any rate, it obviously did declare that the only interest sufficient to support an action of any sort to the end of ascertaining the validity or regularity of such franchise was in the state. Hence the obstacle which precludes this action as to all the other forms of relief is not present with reference to this one. If the action can be maintained at all to declare those franchises void it should be brought by the state. But here we meet a distinction not very clearly recognized or maintained through the respondent's brief. That distinction is between the state of Wisconsin and the attorney general. Their power and authority is neither identical nor coterminous. There may be many things which the state of Wisconsin may do without the conclusion resulting that the attorney general may do them. In Wisconsin, otherwise than in many if not most states, the powers of the attorney general are strictly limited. He is a constitutional officer, but by the constitution he is given only such powers as "shall be prescribed by law." Sec. 3, art. VI, Const. It is therefore essential to the maintenance of an action brought by the attorney general *ex officio* and *sua sponte* that we should find some statute authorizing it. His general powers, which are conferred by sec. 163, Stats. (1898), may be summarized to prosecute or defend all actions, etc., in the supreme court in which the state shall be interested or a party and to appear for the state and prosecute or defend in any circuit court or before any officer whenever requested by the governor or either branch of the legislature. This action was not in the supreme court but in the circuit court, and was not requested by the governor or either branch of the legislature. Hence no authority

can be deduced from this section.   When we turn to the subject of regulation of corporations we find sec. 3240, Stats. (1898), directing that an action may be brought in the name of the state for the purpose of vacating or annulling an act of incorporation or an act renewing corporate existence on the ground that the same was obtained by fraud, but not in the discretion of the attorney general, and only when the legislature shall direct.   By sec. 3241, Stats. (1898), an action in the name of the state is authorized for the purpose of vacating the charter or annulling the existence of a corporation upon various grounds, among them the exercise of unlawful franchises, but here, too, the discretion of the attorney general is restrained and the suit must be "on leave granted by the supreme court upon cause shown;" and that this is no mere idle or formal restraint upon the attorney general has been declared in *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 39, 69 N. W. 794.   By sec. 3466, Stats. (1898), the attorney general is granted authority in his discretion to bring proceedings in the nature of *quo warranto* or *scire facias* when any person usurps any franchise within this state or any office in a corporation.   This of course is not such an action.   Finally, sec. 3236, Stats. (1898), authorizes the courts to entertain an action at the suit of the attorney general to restrain a corporation by injunction from "assuming or exercising any franchise, liberty or privilege or transacting any business not authorized by its charter."   If this may be considered an authority to the attorney general, still it is not suggested here that the corporation defendant is exercising any franchise or prosecuting any business not authorized by its charter.   It is a street railway company, and its charter as such authorizes it to exercise all the franchises and do all the business provided for by the ordinance in question.   No other statute has been

suggested to us vesting the attorney general with any authority to commence an action such as this. Obviously that statutes examined are not so effective.

We therefore reach the conclusion that there exists no cause of action which may be maintained by the attorney general in the name of the state of Wisconsin for any of the general purposes asserted herein. The right to call men to the witness stand and examine them as to their private affairs is a most serious invasion of their liberties, if not indeed a deprivation of property in many cases (*Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 113 N. W. 456), and can be justified only on the ground that courts are entitled to the information in aid of a proper judicial proceeding. Sec. 4096, Stats. (1898), was intended to go no further, and, where it is apparent that there is no such judicial proceeding, examination should not be allowed. The courts under such circumstances, when the futility of the alleged attempt to institute a suit is made manifest, should not only prevent an examination but should dismiss the ostensible action. *Madison v. M. G. & E. Co.* 129 Wis. 249, 108 N. W. 65.

*By the Court.*—Order of the circuit court is reversed, and cause remanded with directions to dismiss the action.

Timlin and Bashford, JJ., took no part.